The Honorable Brian A. Tsuchida

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Premera Blue Cross,<br>A Washington non-profit corporation,<br>　　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Mary Winz, et al.,<br>　　　　　　　　　　　　　　Defendants. | NO. 2:17-CV-00695-BAT<br><br>**MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Note on Motion Calendar:<br>**April 12, 2018** |

Comes now Defendant, Joyce Arlene Nelson (formerly Lesan) , by and through counsel of record, and in Response and Opposition to the Motion for Summary Judgment by Defendants Winz and Lesan, states as follows:

1. **MATERIAL FACTS MAY BE IN DISPUTE**

While many of the material facts do not appear to be in dispute, there is a significant and key fact that may continue to be disputed; to wit, did the decedent, Gerald Lesan, willfully violate discovery rules in the action to dissolve his marriage from Joyce Lesan (now Nelson) by hiding and failing to reveal his interest in a PEP plan and should this undisclosed asset, the PEP Plan at issue herein, be divided between the litigants.

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT　　　Page 1
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

2. **IF NOT DISPUTED, SHOULD THIS COURT APPLY WASHINGTON LAW TO DIVIDE THE UNDISCLOSED ASSET (PEP) OR CERTIFY THE ACTION TO SUPERIOR COURT FOR RULING.**

The decedent, Gerald Lesan, participated in the Pension Equity Plan (PEP) through Premera. As more fully set forth herein, during the course of proceedings to dissolve his marriage from Defendant Nelson (fka Lesan), he committed a major discovery violation and did not reveal the existence of the PEP plan. We assert that under Washington law, that would leave the plan to be divided by Qualified Domestic Relations Order (QDRO) entered posthumously in the Superior Court dissolution action or subject to dissolution as an undisclosed asset under Washington law. This issue has been plead herein as a Counter-Claim by Nelson. If the allegation regarding his discovery violation and failure to reveal the existence of the PEP plan is admitted, then this Court may proceed to rule on how this asset should be divided, despite ERISA, under Washington law or could permissibly certify the issue to the Snohomish County Superior Court.

3. **ARGUMENT**

The burden of proof, as is known to the Court bears the burden of proof in a motion seeking "Summary Judgment" and all inferences with respect to allegations of fact must be decided in favor of the responding party.

> "Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."2 Fed.R.Civ.P. 56(c). A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,</u> 809 F.2d 626, 630 (9th Cir. 1987)

But in this case, there exist factual inferences supporting Defendant Nelson's "cross-claim" for assets undisclosed and hidden during the course of their divorce proceedings in Superior Court which raise an additional burden on the movant.

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT Page 2
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

*A. The Summary Judgment Test*

*Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."2 Fed.R.Civ.P. 56(c). A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987)*

In another case from the 2nd Circuit:

*"We have defined spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999). The spoliation of evidence germane "to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.1998). This sanction serves a threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation. See West, 167 F.3d at 779. In borderline cases, an inference of spoliation, in combination with "some (not insubstantial) evidence" for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment. Kronisch, 150 F.3d at 128.*

*"Where one seeks an adverse inference regarding the content of destroyed evidence, one must first show that "the party having control over the evidence ... had an obligation to preserve it at the time it was destroyed." Kronisch, 150 F.3d at 126. Such an obligation usually arises when a "party has notice that the evidence is relevant to litigation ... but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Id. The law in this circuit is not clear on what state of mind a party must have when destroying it. In Reilly v. Natwest Markets Group Inc., we noted that at times we have required a party to have intentionally destroyed evidence; at other times we have required action in bad faith; and at still other times we have allowed an adverse inference based on gross negligence. See Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir.1999), cert. denied, 528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000). In light of this, we concluded a case by case approach was appropriate. See id. Finally, a court must determine "whether there is any likelihood that the destroyed evidence would have been of the nature alleged by the party affected by its destruction." Kronisch, 150 F.3d at 127. The burden falls on the "prejudiced party" to produce "some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files." Id. at 128." <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 107–08 (2d Cir. 2001)*

**MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** Page 3
(NO. 2:17-CV-00695-BAT)

GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

4. **ARGUMENT**

Facts that are not in dispute include the following:

A. Gerald Lesan and Joyce Lesan were married and an action to dissolve their marriage was filed in Snohomish County Superior Court (Cause No. 15-3-00665-9).

B. Gerald Lesan was under indictment and charge for crimes related to child pornography at the time the dissolution of the marriage was pending and finalized.

C. Shortly after the entry of the Final Divorce Order, Gerald Lesan killed himself on Dec. 31, 2016. See *Motion to Dismiss Indictment* in CR15-387RJB (01/09/17).

D. At the time of his death, he had an interest in a 401(K) plan that was divided on a 50/50 basis by QDRO in the dissolution action.

E. At the time of his death, he also had an interest in a PEP plan that was not specifically enumerated in the Final Divorce Order and the marital community interest of his spouse was not specifically recognized or divided. He designated other family members as beneficiaries of the PEP benefit.

F. Defendant Nelson initiated proceedings in Snohomish County Superior Court to address and divide the undisclosed PEP Plan on Oct. 11, 2017 (less than 18 months after his death and the entry of the Final Divorce Order).

What may be in dispute include whether or not Gerald Lesan intentionally omitted revealing the existence of his interest in the PEP plan during the course of discovery in the dissolution proceeding. If this is not in dispute, under Washington law, this asset should be subject to division in the dissolution proceeding or a separate partition action to address the asset, even posthumously. We rely upon the Declarations of Lara Dethlefs and Joyce Nelson filed herein.

We believe this Court should either (1) allow the matter of the division of the PEP plan to be addressed by the Snohomish County Superior Court in an appropriate proceeding dealing with an asset which is claimed to be "undisclosed" and undistributed; (2) certify the question regarding its division to the Snohomish County Superior Court for resolution and ruling; or (3)

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT      Page 4
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

rule that the PEP plan, as a result of an intentional discovery violation, should be distributed in whole or 50% to the former spouse of Gerald Lesan, Joyce Nelson.

In a Second Circuit decision involving the destruction of evidence, not unlike an intentional withholding of evidence, the court found that the destruction of evidence alone and itself was adequate to defeat summary judgment.

> "We have defined spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999). The spoliation of evidence germane "to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.1998). This sanction serves a threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation. See West, 167 F.3d at 779. In borderline cases, an inference of spoliation, in combination with "some (not insubstantial) evidence" for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment. Kronisch, 150 F.3d at 128.
>
> "Where one seeks an adverse inference regarding the content of destroyed evidence, one must first show that "the party having control over the evidence ... had an obligation to preserve it at the time it was destroyed." Kronisch, 150 F.3d at 126. Such an obligation usually arises when a "party has notice that the evidence is relevant to litigation ... but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Id. The law in this circuit is not clear on what state of mind a party must have when destroying it. In Reilly v. Natwest Markets Group Inc., we noted that at times we have required a party to have intentionally destroyed evidence; at other times we have required action in bad faith; and at still other times we have allowed an adverse inference based on gross negligence. See Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir.1999), cert. denied, 528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000). In light of this, we concluded a case by case approach was appropriate. See id. Finally, a court must determine "whether there is any likelihood that the destroyed evidence would have been of the nature alleged by the party affected by its destruction." Kronisch, 150 F.3d at 127. The burden falls on the "prejudiced party" to produce "some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files." Id. at 128."
>
> "Several courts have held that destruction of evidence in violation of a regulation that requires its retention can give rise to an inference of spoliation. See Latimore v. Citibank Fed. Sav. Bank, 151 F.3d 712, 716 (7th Cir.1998) ("The violation of a record[-]retention regulation creates a presumption that the missing record contained evidence adverse to the violator."); Favors v. Fisher, 13 F.3d 1235, 1239 (8th Cir.1994) (because employer violated record retention regulation, plaintiff "was entitled to the benefit of a presumption that the destroyed documents would have bolstered her case");

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT   Page 5
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

*Hicks v. Gates Rubber Co., 833 F.2d 1406, 1419 (10th Cir.1987) (same); see also Steffen Nolte, The Spoliation Tort: An Approach to Underlying Principles, 26 St. Mary's L.J. 351, 368-69 (1995) (collecting cases announcing a tort cause of action for spoliation based on violation of record-retention regulations)."* <u>Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 108–09 (2d Cir. 2001)</u>

Although not necessarily binding on this court, a decision from the U.S. District Court in Vermont arose out of similar facts and has illustrative reasoning. The underlying facts were that a Tax Deferred Savings Plan (TDSP), similar in nature to the PEP, became divisible by a QDRO entered posthumously.

*A. The TDSP Order is a Valid QDRO*

*"Generally, ERISA preempts state laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a). An exception exists, however, for QDROs. 29 U.S.C. § 1144(b)(7) (stating that ERISA does not preempt "qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title)"). This exception is intended "to give effect to divorce decrees and related state-court orders insofar as they pertain[ ] to ERISA-regulated plans." Metropolitan Life Ins. Co. v. Bigelow, 283 F.3d 436, 441 (2d Cir.2002).*

*"The requirements for a valid QDRO are outlined in 29 U.S.C. § 1056(d)(3). First, a QDRO must be a domestic relations order ("DRO"). 29 U.S.C. § 1056(d)(3)(B). DROs include any order that "relates to the provision of ... marital property rights to a ... former spouse ... of a participant, and ... is made pursuant to a State domestic relations law." 29 U.S.C. § 1056(d)(3)(B)(ii). A QDRO must be an order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I).*

*"A QDRO must also satisfy a variety of other statutory requirements. A QDRO cannot (1) require the plan to provide any type of benefit not otherwise provided, (2) require the plan to provide increased benefits, or (3) require benefits to be paid to an alternate payee which must be paid to another alternate payee under another QDRO. 29 U.S.C. § 1056(d)(3)(D); see also Bigelow, 283 F.3d at 441. Finally, a QDRO must specify the name and mailing address of the alternate payee and the affected plan participant, the amount or percentage of the participant's benefits to be paid or the means by which that amount will be determined, the number of payments or time period to which the order applies, and the plan to which the order applies. 29 U.S.C. § 1056(d)(3)(C); see also Bigelow, 283 F.3d at 441.*

*"If we apply the statutory requirements, it seems straightforward that the TDSP Order is a valid QDRO. First, it is an order concerning marital property rights and it recognizes an alternate payee's right to proceeds of a plan. Thus, the Order satisfies the requirements of 29 U.S.C. § 1056(d)(3)(B). The TDSP Order also provides the required addresses, plan details, number of payments (in this case a single lump sum) and provides a means for determining the amount to be payed. Thus, the TDSP Order satisfies the requirements of 29 U.S.C. § 1056(d)(3)(C).*

**MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**   Page 6
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

"The TDSP Order also satisfies the requirements of 29 U.S.C. § 1056(d)(3)(D). The TDSP Order awards Lucy 50% of the increase in the account balance from September 16, 1989 through January 13, 2003. Thus, it does not require the plan to provide increased benefits or a type of benefit not otherwise provided for. Similarly, the TDSP Order does not require benefits to be paid to an alternate payee which must then be paid to another alternate payee under another QDRO.

"Rather than argue that the TDSP Order fails to satisfy a statutory requirement, Andrew and Emily argue that the TDSP Order is not a valid QDRO because it was issued after the death of Gregory Price. They claim that QDROs cannot be retroactively applied. In response, Lucy argues that the weight of authority supports the position that QDROs can be issued nunc pro tunc. Lucy is correct.

"A number of courts have held that QDROs may be issued nunc pro tunc after the death of the plan participant. In Trs. Of Directors Guild Of America Producer Pension Benefits Plans v. Tise, 234 F.3d 415 (9th Cir.2000), amended by, 255 F.3d 661 (9th Cir.2000) the Ninth Circuit considered this issue in detail. In Tise, a child support order was converted to a QDRO after the death of the plan participant. This order was issued nunc pro tunc. See Tise, 234 F.3d at 419. The Ninth Circuit held that the QDRO was valid. See id. at 420–25.

"The Tise court reached its conclusion after a careful review of the statutory scheme governing QDROs. First, the Court noted that "for all the detail of the QDRO requirements, ERISA nowhere specifies that a QDRO must be in hand before benefits become payable." Id. at 421. The court placed special emphasis on 29 U.S.C. §§ 1056(d)(3)(G)-(H), noting that, under these provisions, "the statute specifically provides for situations in which no valid QDRO issues until after benefits become payable." Id.

"If a pension plan is placed on notice that a DRO may be a QDRO, it may take a reasonable period to determine whether the DRO is a QDRO. 29 U.S.C. § 1056(d)(3)(G)(i)(II). The statute requires a pension plan to segregate any benefits that would be payable to an alternate payee under the terms of this DRO during the first 18 months that those benefits would be payable if the DRO is ultimately deemed a QDRO. 29 U.S.C. § 1056(d)(3)(H)(i). As the Ninth Circuit notes, it is unlikely Congress expected that plan administrators would need 18 months to determine if a DRO is a QDRO. See Tise, 234 F.3d at 422. Rather, the 18 month period "was to provide a time in which any defect in the original DRO could be cured." Id.

"This conclusion is strongly supported by the text of 29 U.S.C. § 1056(d)(3)(H)(ii) which requires the plan administrator to pay the segregated funds to the alternate payee if "the order (or modification thereof)" is determined to be a QDRO. 29 U.S.C. § 1056(d)(3)(H)(ii) (emphasis added). Thus, the statute allows an alternate payee 18 months after benefits become payable to perfect a DRO into a QDRO. See Tise, 234 F.3d at 422. Here, Lucy obtained the TDSP Order approximately 11 months after the Divorce Decree. Thus, the TDSP Order was filed during the eighteen-month period permitted under ERISA to secure a QDRO. See id.; see also Hogan v. Raytheon, Co., 302 F.3d 854, 857 (8th Cir.2002).

"Equitable considerations also favor recognizing QDROs issued nunc pro tunc. If an alternate payee automatically lost any right to plan proceeds "once an event occurred that, absent an enforceable QDRO would make the proceeds payable to someone else,

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT   Page 7
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

*then a plan participant's retirement, the vicissitudes of court scheduling, or a plan participant's death, all events beyond the control of the alternate payee, could determine the parties' substantive rights." Tise, 234 F.3d at 423; see also Patton v. Denver Post Corp., 326 F.3d 1148, 1153–54 (10th 2003). These considerations are especially pertinent here. The Divorce Decree outlines a clear agreement between Lucy and her ex-husband. Thus, if the TDSP Order is not given effect as a QDRO then Lucy will lose some of the benefits of her divorce agreement.*

*"The Eighth Circuit and the Tenth Circuit have both followed Tise. See Patton, 326 F.3d at 1151–54; Hogan, 302 F.3d at 857. The facts of Hogan are very similar to the facts here. In both cases, the plan participant died after a divorce order was entered but before a QDRO had been prepared to effectuate the terms of the divorce order. Hogan, 302 F.3d at 855–56. In Hogan, the participant's ex-spouse also obtained a posthumous QDRO. Id. at 856. The court held that the QDRO was valid. Id. at 857.*

*"In response to Lucy's argument, Andrew and Emily cite Ross v. Ross, 308 N.J.Super. 132, 705 A.2d 784 (1998), Samaroo v. Samaroo, 193 F.3d 185 (3rd Cir.1999) and Rivers v. Central & S.W. Corp., 186 F.3d 681 (5th Cir.1999). These cases are not persuasive here.*

*"Ross provides only very weak authority as it predates the federal decisions holding that QDROs may be issued nunc pro tunc after the plan participant's death. See Ross, 705 A.2d at 797 (noting that "[n]o federal case has allowed a QDRO to be entered after a participant's death"). The Ross court indicated that its holding led to "[t]he unfortunate result ... that equity will not prevail." Id. This strongly suggests that the court would have reached a different result in light of the holdings in Tise, Hogan and Patton.*

*"In Samaroo, a divided panel of the Third Circuit rejected a nunc pro tunc QDRO. The facts in Samaroo are quite different from this case. In Samaroo, a divorce decree provided for an equal division of pension plan payments. Samaroo, 193 F.3d at 187. The decree did not have a provision addressing what would occur if the plan participant died prior to becoming eligible for payments. Id. When the plan participant died prior to becoming eligible for payments his ex-wife obtained a nunc pro tunc amendment to the divorce decree purportedly entitling her to the pre-retirement survivor's annuity. Id. at 186.*

*"The Samaroo court held that, under 29 U.S.C. § 1056(d)(3)(D), the amended divorce decree was not a QDRO because it increased the liability of the plan. See id. at 189–91. The court noted that, after his divorce, the plan participant maintained the right to remarry and confer survivorship benefits on his new wife. Id. at 191. The court held that the right to dispose of the survivor's annuity lapsed when the plan participant died. Id. Thus, when the participant died, the plan was not required to make any payment. In contrast, under the nunc pro tunc amendment to the divorce decree, the plan would be required to pay the survivor's annuity. See id. Thus, the court concluded that the QDRO would increase the liability of the plan.*

*"In this case, it is clear that the TDSP Order does not increase the liability of the plan. This case involves a savings plan rather than survivorship benefits. The full proceeds of this plan will be distributed regardless of how the Court rules. Neither party contests this. Thus, the TDSP Order has no effect on the amount or type of benefits that will be paid. This means that the Order satisfies the requirements of 29 U.S.C. § 1056(d)(3)(D) and Samaroo is not applicable.*

**MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**   Page 8
(NO. 2:17-CV-00695-BAT)

GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

> "Andrew and Emily suggest that Samaroo holds that QDRO's can never be applied retrospectively. This is not correct. In response to a vigorous dissent, the Samaroo majority expressly noted that its holding was limited to the facts at hand. See id. at 190 n. 3. Thus, the court did not hold that a QDRO may never be modified after the death of the plan participant. See id. Moreover, even if Samaroo did so hold, this would be inconsistent with the weight of federal authority. See Patton, 326 F.3d at 1151–54; Hogan, 302 F.3d at 857; Tise, 234 F.3d at 422

> "Finally, Rivers is also inapposite. Rivers involved an attempt to divest and transfer benefits that had vested in a subsequent spouse over 24 years before. See Rivers, 186 F.3d at 682–83. Moreover, a nunc pro tunc QDRO was never entered in that case. See id. at 682. Thus, that case raised quite different statutory and policy considerations than those applicable here. See Tise, 234 F.3d at 423 n. 6..

> The TDSP Order satisfies all the statutory requirements of a QDRO. Moreover, the weight of authority strongly supports the view that a QDRO may be entered retrospectively after the death of a plan participant. Thus, the Court holds that the TDSP Order is a valid QDRO. This means that Lucy is entitled to 50% of the increase in the TDSP savings account balance from September 16, 1989 through January 13, 2003." IBM Sav. Plan v. Price, 349 F. Supp. 2d 854, 857–60 (D. Vt. 2004)

Under the law of the State of Washington, an undisclosed or undistributed asset in a dissolution proceeding is subject to division on a 50/50 basis. In an analogous situation, the Washington Court of Appeals ruled:

> "The 2010 marital dissolution decree did not list John Grant's PERS pension plan as an asset, and the decree awarded John "the balance of assets" not specifically awarded to Kathleen Grant. On appeal, Kathleen contends the divorce decree provision "the balance of the assets" failed to divest the community interest in John's pension because of the pension's significance and her lack and the trial court's lack of knowledge of the existence of the asset."

> "A dissolution court cannot decree a fair allocation of assets and debts without the court gaining thorough knowledge of the parties' property and liabilities. Thus, the Supreme Court has held that a settlement agreement or decree of dissolution must adequately identify the assets so as to permit the court to approve the agreement or make proper division. Yeats v. Estate of Yeats, 90 Wash.2d at 206, 580 P.2d 617 (1978). At a minimum, the documents must put the parties and the court on notice that the assets exist. Yeats v. Estate of Yeats, 90 Wash.2d at 206, 580 P.2d 617. On this basis, we hold that the 2010 divorce decree failed to distribute John Grant's interest in his PERS retirement plan and the parties hold an equal share in the plan as of the date of the divorce." In re Grant, 199 Wash.App. 119, 397 P.3d 912, 918 (2017)

Although the division of the PEP being sought was brought in the dissolution action (with an expectation that it would not be contested), Defendant Nelson is also willing to initiate a "partition action" if the PEP was "not disposed of" in the Final Divorce Order.

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT   Page 9
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

But, the disposition of assets and liabilities in the Final Divorce Order can also be challenged and vacated under CR 60 for fraud and discovery violations (which was plead as one of the basis for the Motion in Superior Court (filed as Exhibit C to *Declaration of Juhl*).

While there is case law that suggests than only an action to "partition" the asset does exist in Washington from 1909, Meisenheimer v. Meisenheimer, 55 Wash.31 (1909), more recent decisions provide more latitude to proceed to open up the Decree or disposition of assets.

> *"The United States Supreme Court, however, has held that a divorce decree pending appeal does not abate upon the death of a party when property rights are involved. In Bell v. Bell, 49 the husband obtained a divorce decree in Pennsylvania by falsely stating he was a resident of that state. The wife brought a petition for divorce and alimony in the Supreme Court of New York where she resided, asserting that the Pennsylvania court did not have jurisdiction to grant her husband a divorce. The New York Court of Appeals upheld the decision of the New York Supreme Court that the Pennsylvania court lacked jurisdiction, and granted the wife's action for divorce and alimony. The husband obtained review by the United States Supreme Court, but died before its decision was announced. The Supreme Court affirmed the ruling of the New York Court of Appeals, stating that the judgment was not only for divorce but was for a large sum of alimony:*
>
> *"The wife's rights to such alimony and costs, though depending on the same grounds as the divorce, are not impaired by the husband's death, should not be affected by the delay in entering judgment here while this court has held the case under advisement, and may be preserved by entering judgment nunc pro tunc as of the day when it was argued.*
>
> *"It is true that this Court has long held that a dissolution action abates upon the death of one of the parties unless the rights of third parties are involved in the dissolution. We have rejected the general rule followed in virtually all other jurisdictions that during the time an appeal is pending or during the time when an appeal may be taken, a divorce or dissolution action abates with respect to marital status of the parties but does not abate with respect to property interests affected by the decree.*
>
> *"As this Court observed in Osborne, "[i]t may be that this rule [established in Dwyer] is harsh and is more restrictive than the rule in other jurisdictions." We believe the facts in this case justify our reconsideration of the rule in Dwyer on equitable grounds."* <u>In re Marriage of Himes</u>, 136 Wash. 2d 707, 725–26, 965 P.2d 1087, 1096–97 (1998)

Although we acknowledge that the Court had jurisdictional grounds supplementing the misconduct of the party, the Supreme Court then went on to sustain the trial court's decision "vacating" the dissolution decree.

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT   Page 10
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

> *We overrule the 1905 decision in Dwyer v. Nolan which established the principle that death of one party to a divorce or dissolution proceeding eliminates the subject matter of the action, and reverse the Court of Appeals which reversed the decision of the Snohomish County Superior Court granting Petitioner Frances A. Himes' motion to vacate the default dissolution decree. We affirm the decision of the trial court."* In re Marriage of Himes, 136 Wash. 2d 707, 737, 965 P.2d 1087, 1102 (1998)

We believe this Court would be similarly justified in dividing the undisclosed asset under FRCP 60, particularly subsections (b)(2) and (3). This can be accomplished by allowing the cross-claim of Defendant Nelson to proceed in this matter or allow the matter to be litigated in Snohomish County Superior Court. But this issue should be sufficient to warrant denial of the Motion for Summary Judgment. Alternatively, the Court could deny the motion for summary judgment and require the parties to litigate the matter in Superior Court.

Documentation supporting the claim of discovery violations is filed herewith including the Declaration of attorney Lara Dethlefs and Defendant Joyce Nelson. We also note that our Motion in the Superior Court matter (with its exhibits) has been filed by the moving party as part of their motion and we will not unnecessarily duplicate that motion and its supporting documents but refer the Court's attention to it.

DATED this 8th day of April, 2018.

ANDERSON HUNTER LAW FIRM

By _____
G. Geoffrey Gibbs, WSBA No. 6146
2707 Colby Ave., Ste. 1001
Everett, WA 98201
Telephone: 425-252-5161
Fax: 425-258-3345
Email: ggibbs@andersonhunterlaw.com

***Attorneys for Defendant Joyce (Lesan) Nelson,***

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT   Page 11
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 9th 8th day of April, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter and via email to the following:

/s/ _____
Teresa Epley

K&L Gates LLP
Robert B. Mitchell, WSBA No. 10874
Peter A. Talevich, WSBA No. 42644
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: (206) 623-7580
Facsimile: (206) 623-7022
Robert.mitchell@klgates.com
Peter.talevich@klgates.com
Attorneys for Plaintiff Premera Blue Cross

Ryan Swanson Cleveland
Hans Juhl, WSBA No. 33116
Peter A. Talevich, WSBA No. 42644
1201 Third Ave., Suite 3400
Seattle, WA 98104
Telephone: (206) 654-2203
Facsimile: (206) 652-2903
juhl@ryanlaw.com
Attorney for Tracie Lesan and Mary Winz

MEMORANDUM IN RESPONSE AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT   Page 12
(NO. 2:17-CV-00695-BAT)
GGG\18996\0001\00965939.v1

ANDERSON HUNTER LAW FIRM, P.S.
2707 Colby Avenue, Ste. 1001
Everett, Washington 98201
Telephone 425-252-5161