UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PREMERA BLUE CROSS,

    Interpleader Plaintiff,

v.

MARY WINZ, TRACIE LESAN, JOYCE ARLENE NELSON (f/k/a JOYCE ARLENE LESAN),

    Interpleader Defendants.

CASE NO. C17-695-BAT

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS WINZ AND LESAN**

Interpleader Defendants Mary Winz ("Winz") and Tracie Lesan ("Lesan") move pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order of judgment directing Premera Blue Cross ("Premera"), to pay them the interpleaded funds pursuant to the most recent beneficiary designations governing two employee benefit plans (a pension equity plan ("PEP") and 401(k) savings plan ("401(k)")) (collectively "the Plans") owned by Gerald Lesan ("Gerald"), who is now deceased. Co-Interpleader Defendant, Joyce Arlene Nelson ("Nelson"), who was formerly married to Gerald, claims she is entitled to the benefits from both Plans.[1] Dkt. 27.

Winz and Lesan, Gerald's mother and sister respectively, contend that Nelson is not entitled to the funds because the Plans are governed by the Employee Retirement Income

---

[1] To avoid confusion of shared last names, Gerald is referred to by his first name, while the remaining parties are referred to by their last.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS
WINZ AND LESAN - 1

Security Act of 1974 (ERISA) and the Retirement Equity Act of 1984 (REA), which preempt state law and the Plan benefits must be distributed according to the beneficiary designations at the time of Gerald's death. In addition, they argue that Nelson agreed in her divorce from Gerald to accept not more than 50% of the benefits, existing at the time of the divorce, in the 401(k).

Nelson contends that, in addition to the 50% share of the 401(k) benefits she has received, she is entitled to all remaining 401(k) benefits and all of the PEP benefits. She argues that she is equitably entitled to these additional amounts because Gerald violated discovery rules and hid the existence of the PEP from her during their divorce. Dkt. 31. Nelson proposes that this Court should rule on the division of the retirement benefits "despite ERISA, under Washington law" or alternatively, "certify the issue to the Snohomish County Superior Court." *Id.*

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds that summary judgment in favor of Winz and Lesan is appropriate.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir.2012). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)).

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1059 (9th Cir.2012).

**FACTS**

Gerald and Nelson were married on May 5, 1997. Dkt. 28, Declaration of Hans P. Juhl, ¶ 4. During their marriage, Gerald was employed by Premera. Dkt. 29, Declaration of Robert Moe, ¶ 2. While employed at Premera, Gerald participated in Premera's PEP and 401(k) plans, which are employee pension benefit plans as defined by Section 3(2)(A) of ERISA. *Id*. ¶ 3-7; Dkt. 30, Affidavit of Daniel W. Nason, ¶ 1. On March 13, 2003, Gerald designated Nelson as the primary beneficiary of his PEP and 401(k) plan benefits. Dkt. 29, Moe Decl. ¶ 5-7. He designated his mother Winz, as the secondary beneficiary of his PEP and 401(k) plan benefits. *Id*.; *see also,* Exhibit D (designation form for 401(k) plan).

On December 12, 2016, Snohomish County Superior Court issued a Final Divorce Order and Dissolution Decree between Nelson and Gerald. Dkt. 28, Juhl Decl. ¶ 5. The parties entered their final dissolution pleadings by agreement. *Id*. The agreement provided that Nelson was entitled to the lump sum value of 50% of Gerald's 401(k) benefits as of November 30, 2016 (the date of the Decree). *Id.*, Exhibit A at 2. The lump sum was to be payable when the plan administrators received a Qualified Domestic Relations Order ("QDRO"), as defined in Section 206(d) of ERISA and Section 414(p) of the Internal Revenue Code. Dkt. 29, Moe Decl. ¶ 6. The divorce decree also awarded to Gerald all employment benefits "including but not limited to any 401k, pension or other retirement benefit . . . except as otherwise listed…." *Id.*, Exhibit A at 2. Nelson was awarded all of her own employment benefits, including "but not limited to any 401k, pension or other retirement benefit…." *Id*.

At the time of the parties' divorce, Gerald's 401(k) was worth $180,000.00 and the PEP was valued at approximately $125,000.00. Dkt. 32, Declaration of Joyce Lesan, p. 2. During the divorce proceedings, Gerald responded to interrogatories and requests for production, in which

he was asked if he had "any interest of any kind in any retirement or pension fund," to which he responded "yes," and identified the 401(k) fund with a balance of $180,000.00. *Id.*, Exhibit 3.

Nelson states that had she "been aware at all that the PEP existed at the time we negotiated and finalized our divorce by agreement, I would most certainly have claimed 50% of the PEP plan." Had the PEP plan been revealed to her attorney and herself, Nelson asserts that the asset would have been specifically included in the "50/50 division of other assets" and she would not have allowed the inclusion of the "generic language…awarding to each of us our employment benefits 'except as otherwise listed.'" *Id.*, Exhibit 1 at 2; Dkt. 33, Declaration of Lara Dethlefs.

As a result of the dissolution decree, Gerald's designation of Nelson as the primary beneficiary of his PEP and 401(k) plan benefits was automatically revoked, pursuant to Section 8.5(f) of the PEP and Section 15.1(e) of the 401(k). Dkt. 29, Moe Decl. ¶ 5, 7; Exhibits A and C. On December 16, 2016, Gerald designated his sister, Lesan, as the primary beneficiary of his PEP benefits. *Id.* ¶ 5; Exhibit B. He did not change the beneficiary designations on his 401(k) Plan. *Id.* ¶ 7. By virtue of the automatic revocation, this left Gerald's mother, Mary Winz, as the primary beneficiary of the funds remaining in Gerald's 401(k) Plan (after distribution to Nelson pursuant to the QDRO).

Gerald committed suicide on December 31, 2016. Dkt. 28, Juhl Decl. ¶ 6; Dkt. 31 at 4. A probate proceeding for Gerald's estate was opened on February 3, 2017 in Jefferson County, Washington. *Id.* ¶ 7. No Personal Representative of Gerald's estate had been appointed as of the date of the filing of the summary judgment motion. *Id.* The PEP and remaining 401(k) plan benefits became payable upon Gerald's death. *Id.*, ¶ 5-7. On or about March 29, 2017, the 401(k)

Plan received a QDRO requiring that a portion of Gerald's 401(k) Plan benefits be paid to Nelson in accordance with, and subject to, the terms and provisions of the QDRO. Dkt. 25, ¶ 24.

Nelson filed a Motion to Divide Undisclosed Property and for Other Relief in the original divorce proceedings in Washington state court on October 13, 2017. Dkt. 28, Juhl Decl. ¶ 8. However, she later struck the motion and has not re-noted it for hearing or taken other action in the state law dissolution proceeding. *Id.*, ¶ 10.

Following Gerald's death, Premera proposed a plan to distribute the PEP and remaining 401(k) plan benefits to the three defendants, but the parties did not consent to the proposed plan. On May 3, 2017, Premera filed the complaint for interpleader in this Court, naming Nelson, Lesan, and Winz as defendants. Dkt. 1. Lesan and Winz filed an answer on June 26, 2017. Dkt. 18. Nelson filed an answer to Plaintiff's complaint in interpleader and cross-claims against Lesan and Winz on February 6, 2018. Dkt. 25.

On December 18, 2017, the Court granted Premera's motion for interpleader, injunctive relief, and dismissal (Dkt 19) pursuant to Federal Rule of Civil Procedure 22 and dismissed Premera from this action, subject to its obligation to maintain Gerald's remaining benefits under the Plans and to pay the proceeds of the Plans as directed by order of this Court. Dkt. 23.

**DISCUSSION**

**A.     ERISA Governs the Plans**

It is not disputed that ERISA governs the Plans. Dkt. 29, Moe Decl. Ex. A, B; Dkt. 25, ¶ 1, 2, 6, 7. ERISA-governed plans may only be altered by complying with clear statutory directives. *See* 29 U.S.C. § 1056. The division, transfer, assignment, or award of ERISA-regulated assets can only be made according to the federal regulations governing those transfers. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 121 S. Ct. 1322, 1324, 149 L. Ed. 2d 264

(2001); *Boggs v. Boggs*, 520 U.S. 833, 117 S. Ct. 1754, 138 L. Ed. 2d 45 (1997); *Carmona v. Carmona*, 603 F.3d 1041 (9th Cir. 2010).

The principal object of ERISA statute is to protect plan participants and beneficiaries. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983) ("ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans"); *see* Section 1001(b) (the policy of ERISA is "to protect ... the interests of participants in employee benefit plans and their beneficiaries."); Section 1001(c) (ERISA contains certain safeguards and protections which help guarantee the "equitable character and the soundness of [private pension] plans" in order to protect "the interests of participants in private pension plans and their beneficiaries."). Apart from a few enumerated exceptions, a plan fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." § 1104(a)(1).

ERISA contains antialienation and preemption provisions that restrict the ability of state courts and plan participants to transfer and alter interests in ERISA-governed retirement benefits. *See* 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."); 29 U.S.C. § 1144(a) (establishing that ERISA "supercede[s] any and all State laws insofar as they may ... relate to any employee benefit plan ...."). The Ninth Circuit explains how State domestic relations orders that comply with statutory requirements are exempt from "this broad preemption and antialienation scheme":

> . . . Congress has recognized that states, in some circumstances, should be able to enforce their own domestic relations laws with respect to ERISA pensions. As a result, state domestic relations orders ("DROs") that comply with statutory requirements are exempt from both the antialienation and preemption provisions of ERISA. 29 U.S.C. § 1144(b)(7); 29 U.S.C. § 1056(d)(3); *Hamilton*, 433 F.3d at 1096 n.5. A valid DRO can be any judgment, decree, or order which (1) "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant," and (2) "is

> made pursuant to a State domestic relations law." 29 U.S.C. § 1056(d)(3)(B)(ii).
> The qualified domestic relations order, or QDRO, "is a subset of domestic
> relations orders that recognizes the right of an alternate payee to receive all or a
> portion of the benefits payable with respect to a participant under the plan."
> *Hamilton*, 433 F.3d at 1096 (citing 29 U.S.C. § 1056(d)(3)(B)(i)(I)) (internal
> quotation marks omitted).

*Carmona*, 603 F.3d at 1053-1054. As previously noted, Nelson's agreed upon share in Gerald's 401(k) was distributed to her pursuant to a QDRO.

Other than a qualified domestic relations order, ERISA explicitly preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1044(a). ERISA-governed plans must contain anti-assignment provisions which generally prohibit the assignment of benefits to anyone other than participants and their beneficiaries. 29 U.S.C. § 1056(d). Along with ERISA's clear preemptive effect, "a state law cannot invalidate an ERISA plan beneficiary designation by mandating distribution to another person." *Carmona,* 603 F.3d at 1061. A party can waive an entitlement to an interest without expressing that waiver in the form of a QDRO (*i.e.,* in a divorce decree), but an assignment of interest to anyone else or an identification of an alternate payee still requires a QDRO. *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285, 129 S.Ct. 865, 870-873 (2009).

**B.    401(k) Plan**

As previously noted, Nelson received fifty percent of the 401(k) benefits (as of November 30, 2016), via a QDRO pursuant to the consented final divorce order. In her cross claim, Nelson contends that the remaining 401(k) benefits should also be awarded to her in trust for her two children because now that Gerald is dead, he is no longer able to contribute to their support. Dkt. 25 at 5-6. Nelson acknowledges that she was pre-paid a portion of child support, but contends that Gerald's suicide has left her to shoulder the burden of all "post-secondary,

physical, and emotional support for the children, etc." *Id.* at 5. Nelson provides no legal basis to support her claim that Gerald's death – whether by suicide or otherwise – entitles her to more of her share of prior-adjudicated marital property.

In fact, Nelson provided no opposition in her summary judgment response to Winz's request that the Court affirm her right as the designated beneficiary to be distributed the remaining balance of the 401(k) benefits. Dkt. 31. Pursuant to the clear terms of the 401(k) Plan, Gerald's designation of Nelson as the primary beneficiary was automatically revoked, pursuant to Section 15.1(e) of the 401(k). Dkt. 29, Moe Decl. ¶ 7; Exhibit C. Because the 401(k) Plan is an ERISA-governed asset, the plan documents control and it must be distributed according to its beneficiary designation, which at the time of Gerald's death was Winz.

Nelson does not identify any specific factual disputes that must be resolved at trial with regard to Winz's interest nor does she provide any legal basis to resist distribution of what remains of the 401(k) Plan benefits to her former mother-in-law pursuant to the clear directives of the plan documents and ERISA. Accordingly, the Court concludes that under ERISA, the 401(k) Plan documents control, those documents name Winz as beneficiary, and the remaining 401(k) balance should be distributed to Winz.

**C.  PEP Plan**

Nelson's claim to the PEP is based on an allegation that Gerald intentionally deceived her, her counsel, and the state court, as to the existence of the PEP when he answered written discovery in the divorce action. Dkt. 31, at 1. Under Washington law, community property that is intentionally undisclosed may be pursued in a separate state partition action. *See Devine v. Devine*, 42 Wn. App. 740, 743, 711 P.2d 1035 (1985) (The adjudication of rights in property not disposed of in a dissolution decree requires an independent action for partition). However, the

PEP may only be alienated or assigned pursuant to federal statute. See 29 U.S.C. § 1056; *See also* Dkt. 29, Moe Decl., Exhibit A, page 72. Therefore, even if Nelson's allegations are correct and even if she were to prevail in a separate partition action, ERISA would preempt any attempt by this Court or a state court to assign the PEP benefits to anyone other than the designated beneficiary.

ERISA preemption supersedes "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The Supreme Court has held, conclusively, that this preemption applies to requests similar to that made by Nelson and applies both to pre- and post- distribution state law actions. *See Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S. Ct. 1322, 1324, 149 L.Ed.2d 264 (2001) (establishing that ERISA preempts RCW 11.07.010 and other similar statutes – Washington statute revoking a beneficiary request upon the dissolution of the participant's marriage is preempted by ERISA); *Melton v. Melton*, 324 F.3d 941, 945 (7th Cir.2003) (citations omitted) (ERISA preempts state court establishment of constructive trust on plan proceeds – "*Egelhoff* stands for the proposition that a state law cannot invalidate an ERISA plan beneficiary designation by mandating distribution to another person."); *Boggs v. Boggs*, 520 U.S. 833, 835–36, 841-842, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (establishing that ERISA can preempt state law even after benefits have been disbursed to beneficiaries and nothing else is required of the plan – ERISA preempted application of Louisiana's community property laws which would have allowed first wife to make testamentary transfer of her interest in survivor's annuity); *Carmona v. Carmona*, 603 F.3d 1041, 1062 (9th Cir. 2010) (explicitly disapproving of state law "end-runs" around ERISA (such as constructive trusts)). As the Ninth Circuit made clear in *Carmona,* state law "cannot be used to contravene the dictates of ERISA" by mandating distribution to another person:

> Congress, through ERISA, has created a set of fixed property rules state courts are bound to work within. State family courts can and should distribute property in an equitable manner upon divorce, but they must take into account ERISA's rules. ERISA prohibits the state family court from steering the surviving spouse benefits from Janis to Judy, but ERISA did not prohibit the state court from dividing other property or making other adjustments mindful of the benefits provided under the ERISA plan. In this instance, the state family court provided for a transfer of $1500 from Lupe to Janis based upon the premise that Lupe and Janis would each retain their pension benefits as separate property. That premise may have been faulty, but that does not justify disregarding the ERISA limitations.

603 F.3d at 1062. Gerald and Nelson agreed to the terms of their divorce settlement albeit, according to Nelson, on the alleged faulty premise that Gerald had only one retirement plan to divide. Nevertheless, Nelson has provided no legal authority for her position that this Court may ignore ERISA and divide the PEP based on the common law tenancy in common principals applicable to a Washington state partition action (which she presumably could – but has not – commenced against Gerald's estate). And, it is also clear from *Carmona* that the Snohomish County Superior Court cannot do what this Court cannot – the state superior court would still have to take into account ERISA's rules and it would be prohibited from steering benefits of the designated beneficiaries to Nelson.[2] *See, e.g., Estate of Lundy v. Lundy,* 187 Wash.App. 948, 352 P.3d 209 (2015) (ERISA preempted state law claims of former husband's estate to proceeds of former husband's retirement account, after their distribution to former wife as designated beneficiary, absent proof of agreement to waive interest as beneficiary, notwithstanding that divorce decree awarded to each former spouse, his or her own retirement funds and 401(k)s, and

---

[2] The cases relied on by Nelson are not to the contrary and in fact are neither binding nor applicable here. In *IBM Sav. Plan v. Price*, 349 F. Supp. 2d 854, 858 (D. Vt. 2004), the court examined whether a lower court's order dividing a tax deferred savings plan met the definition of a QDRO; and *In re Grant*, 199 Wn. App. 119, 122, 397 P.3d 912, 913 (2017) dealt with a Washington State Public Employees Retirement System (PERS) pension plan that had not been divided in the parties' divorce. PERS plans are governed by state law (RCW 41.50, et seq.) and are not ERISA-governed plans.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS
WINZ AND LESAN - 10

notwithstanding alleged presumption of revocation of beneficiary designation upon divorce under Washington statute). Also instructive in *Lundy*, is the Court's rejection of the argument made by the former husband's estate for an equitable remedy based on unjust enrichment based on "circumstantial evidence" supporting that the husband intended to leave his retirement funds to his family and not to his ex-wife. The *Lundy* Court recognized that "unjust enrichment is an equitable remedy not dissimilar to the constructive trust imposed by the trial court and disapproved of by the Ninth Circuit in *Carmona*, 603 F.3d at 1062." *Lundy,* 352 P.3d at 215 n.5.

The applicable cases make clear that, even when the distribution of an ERISA-governed asset may arguably be unfair or may result in unjust enrichment to the designated beneficiary, the directives of the Plan documents must be followed. Because the PEP is an ERISA-governed asset, the Plan documents control and it must be distributed according to its beneficiary designation, which at the time of Gerald's death was Lesan.

Additionally, because the PEP is not subject to division in a partition action, the question of whether or not Gerald disclosed it in the divorce proceeding is immaterial here and does not preclude this Court from finding that summary judgment in favor of Winz and Lesan as to the Plans is appropriate.

**C.    Spoliation**

Nelson suggests for the first time in her opposition that summary judgment may be averted based on a theory of spoliation. Dkt. 31 at 5 (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 76, 779 (2d Cir. 1999). Her cross claim alleges that Gerald intentionally failed to disclose the existence of the PEP (Dkt. 25 at 4) but makes no allegation that Gerald destroyed evidence relating to the PEP. Indeed there is no evidence to this effect and there is no legal authority to support Nelson's assertion that "intentional withholding of evidence" is tantamount

to the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence." There is therefore, no reason to consider the concept of "spoliation" (or attempt to analogize it to other conduct) as a basis to deny the motion for summary judgment of Lesan and Winz.

## CONCLUSION

Based on the foregoing, the motion for summary judgment of Winz and Lesan (Dkt. 27) is **GRANTED**; Nelson's cross claims are dismissed; and, judgment shall be entered declaring the interpleaded funds to be distributed pursuant to the beneficiary requests in effect at Gerald's death.

DATED this 30th day of April, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS
WINZ AND LESAN - 12